**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MICHAEL MONTANEZ, WILLIAM
RIVERA, and TROY COPELAND,

        Plaintiffs,

v.                                     Case No:  6:15-cv-807-Orl-40DAB

JORGE CARVAJAL, TODD RAIBLE,
BRIAN HENDERSON, MIKE
HAVENNER, KYLE BAINBRIDGE,
JULIO RODRIGUEZ, and EDWARD
HART, in their individual capacities,

        Defendants.

---

## ORDER

    This cause comes before the Court on Defendants' Motion to Dismiss Amended

Complaint (Doc. 28), filed June 12, 2015.  Plaintiffs responded in opposition on June 26,

2015.  (Doc. 31).  Upon consideration, Defendants' Motion to Dismiss is granted in part

and denied in part.

## I.    BACKGROUND[1]

    On March 29, 2011, Plaintiffs, William Rivera ("Rivera") and Troy Copeland

("Copeland"), were standing outside the front door of Plaintiff's, Michael Montanez

("Montanez"), residence.  (Doc. 21, ¶ 21).  While Rivera and Copeland smoked a cigarette

and waited for Montanez to return home, the defendant law enforcement officers

---

[1]  This account of the facts is taken from Plaintiff's Amended Complaint (Doc. 21), the
allegations of which the Court must accept as true in considering Defendants' Motion
to Dismiss.  *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality
Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989,
994 (11th Cir. 1983).

(collectively, the "Defendant Officers") arrived at the residence, drew their guns and ordered Rivera and Copeland to lie on the ground. (*Id.* ¶¶ 22, 25). The Defendant Officers then handcuffed Rivera and Copeland and escorted them to a nearby police car. (*Id.* ¶¶ 25–26).

Upon removing Rivera and Copeland from the area, the Defendant Officers opened the front door to Montanez's residence, entered, and initiated a search of the home. (*Id.* ¶ 26). After the initial search, the Defendant Officers remained at Montanez's home for more than six hours while they waited for the issuance of a search warrant. (*Id.* ¶ 29). Once a search warrant was procured, the Defendant Officers completed a more thorough search of the residence which uncovered "a small amount . . . of marijuana" and $18,150 in cash. (*Id.* ¶¶ 38–39). Rivera was ultimately arrested on an outstanding child support capias and Copeland was arrested for possessing a suspended license. (*Id.* ¶¶ 31–32). No one was arrested or charged relative to the marijuana or cash found at Montanez's home. (*Id.* ¶¶ 38–39).

Plaintiffs initiated this lawsuit in state court on March 27, 2015, the Defendant Officers removed, and Plaintiffs filed the Amended Complaint on June 3, 2015. Plaintiffs sue the Defendant Officers in their individual capacities for six federal constitutional violations pursuant to 42 U.S.C. § 1983 and ten state law tort claims. As to Plaintiffs' federal constitutional claims, Montanez alleges that the Defendant Officers unlawfully entered and searched his home and Rivera and Copeland each allege that the Defendant Officers unlawfully searched and seized their persons. Plaintiffs assert that these actions violated the Fourth and Fourteenth Amendments because the Defendant Officers acted without Plaintiffs' consent, without a warrant, without probable cause, and in the absence of exigent circumstances.

As to the state law claims, Montanez alleges that the Defendant Officers invaded his privacy, trespassed on his property, intentionally inflicted emotional distress, and converted a home video surveillance system that was dismantled during the course of the officers' search.  Lastly, Rivera and Copeland each allege claims for assault, battery, and intentional infliction of emotional distress arising out of the events leading to their arrests. The Defendant Officers now move to dismiss Plaintiffs' Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    STANDARD OF REVIEW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint.  In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face when the plaintiff alleges enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The mere recitation of the elements of a claim are not enough and the district court need not give any credence to legal conclusions that are not supported by sufficient factual material. *Id.*  District courts must accept all well-pleaded allegations within the complaint as true and read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994).

## III.    DISCUSSION

The Defendant Officers move to dismiss the Amended Complaint on the grounds that they are entitled to qualified immunity on Plaintiffs' federal constitutional claims, that they are entitled to individual immunity on Plaintiffs' state tort claims, and that the

Amended Complaint amounts to a "shotgun" pleading which prevents the formulation of a response.  The Court addresses each argument in turn.

### A. Whether the Defendant Officers are Entitled to Qualified Immunity on Plaintiffs' Federal Constitutional Claims

First, the Defendant Officers assert that they are entitled to qualified immunity on Counts XI through XVI, which allege federal constitutional claims pursuant to 42 U.S.C. § 1983.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).  A government official acts within his discretionary authority when he "perform[s] a legitimate job-related function . . . through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.  To do so, the plaintiff must make a two-part showing.  First, the plaintiff must demonstrate that the facts of the case, if proven to be true, would make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007).  Second, the plaintiff must demonstrate that the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232.  Because qualified immunity provides a complete defense from suit, "courts should ascertain the validity of a qualified

immunity defense as early in the lawsuit as possible." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

The Defendant Officers show they were acting within the scope of their discretionary authority when they approached Rivera and Copeland, searched and seized their persons, and searched Montanez's home. Plaintiffs must therefore show that qualified immunity is inappropriate by alleging sufficient factual material to warrant the reasonable inference that the Defendant Officers violated clearly established constitutional rights.

To that end, the Fourth Amendment affords a number of clearly established protections that are relevant to this case.[2] First, the Fourth Amendment prohibits unreasonable searches and seizures of one's person. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Short of a formal arrest, a warrant, or exigent circumstances, a police officer may briefly stop and detain an individual only if the officer has a reasonable suspicion that the individual has committed or is about to commit a crime. *Id.* Although reasonable suspicion does not require the officer to have probable cause to believe that crime is afoot, it does require more than a hunch. *Id.* at 273–74. Indeed, a police officer who effects an investigatory seizure and search of one's person "must be able to point to

---

[2]   The Fourth Amendment to the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment's guarantees are made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

specific and articulable facts" which would "warrant a man of reasonable caution" to believe that a crime had been or was about to be committed. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968).

Second, the Fourth Amendment prohibits arrests that are not supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Although a police officer who makes an arrest without probable cause violates the Fourth Amendment, he is nevertheless entitled to qualified immunity if he had "arguable probable cause." *Id.* Arguable probable cause requires the court to ask "whether reasonable officers in the same circumstances and possessing the same knowledge as the [Defendants] *could have believed* that probable cause existed to arrest." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007) (internal quotation marks omitted).

Third, the Fourth Amendment prohibits warrantless searches of one's home absent exigent circumstances. *Groh v. Ramirez*, 540 U.S. 551, 558–59 (2004). Without enumerating every type of situation which may permit a warrantless search of a person's home, exigent circumstances generally exist "when there is a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509 (1978).

Accepting the facts alleged in the Amended Complaint as true,[3] the Court is able to draw the reasonable inference that the Defendant Officers lacked a reasonable

---

[3]   In their Motion to Dismiss, the Defendant Officers ask the Court to consider a police report and search warrant describing the events involved in this case. (Doc. 28, pp. 9–11).  Ordinarily, a court must "not consider anything beyond the face of the complaint

suspicion to initially stop and search either Rivera or Copeland.   Plaintiffs' account indicates that Rivera and Copeland were merely standing outside Montanez's front door smoking a cigarette and waiting for Montanez to return home.   These activities on their own are insufficient to warrant a reasonably cautious police officer to believe that Rivera or Copeland had committed or were about to commit a crime.

The Court is likewise able to reasonably infer that the Defendant Officers lacked arguable probable cause to arrest either Rivera or Copeland.   After excluding the information procured by the Defendant Officers' allegedly illegal search of Rivera's and Copeland's persons, the Defendant Officers would have had no reason to suspect that Rivera held a suspended license or that a child support capias had been issued for Copeland.

Finally, the facts alleged permit the reasonable inference that the Defendant Officers lacked a warrant or exigent circumstances to initially enter and search Montanez's home.   Plaintiffs state that the Defendant Officers opened the closed front door of Montanez's home, entered, and performed a search.   After this initial search, the Defendant Officers waited at the residence for another six hours before obtaining a warrant, re-entering the home, and conducting a second search which yielded marijuana and $18,150 in cash.   The willingness of the Defendant Officers to wait several hours before conducting the second search leads the Court to conclude that plenty of time

---

and documents attached thereto" when resolving a Rule 12(b)(6) motion to dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam).   However, an exception to this rule lies where the plaintiff refers to a document in his complaint, the document is central to his claims, and the contents of the document are undisputed.   *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Because the Amended Complaint vehemently disputes the accuracy and veracity of the statements made in both the police report and search warrant, the Court will not consider either document in resolving the Defendant Officers' Motion to Dismiss.

existed for the officers to seek a warrant, thus precluding a finding of exigency.

For these reasons, the Amended Complaint permits the reasonable inference that the Defendant Officers violated Plaintiffs' clearly established constitutional rights. Accordingly, qualified immunity is not appropriate at this time and the Court will require the Defendant Officers to answer Counts XI through XVI of the Amended Complaint.[4]

### B.    Whether the Defendant Officers are Entitled to Individual Immunity on Plaintiffs' Florida Tort Claims

Next, the Defendant Officers assert that they are entitled to individual immunity on Plaintiffs' state law tort claims (Counts I through X).  Florida's sovereign immunity statute shields police officers from personal liability in tort for injuries or damages they cause while acting within the scope of their employment.  Fla. Stat. § 768.28(9)(a).  Like qualified immunity under federal law, when individual immunity under § 768.28(9)(a) attaches, the police officer is protected not just from liability, but from being sued for state tort claims. *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. Dist. Ct. App. 2011).  However, this immunity from suit will not attach and a police officer may face personal liability for injuries and damages he causes where he "act[s] in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).  The Defendant Officers contend that the facts alleged in the Amended Complaint fail to demonstrate the bad faith, malicious purpose, or wanton and willful conduct necessary to overcome their individual immunity.

---

[4]    The Court notes that its denial of sovereign immunity at the pleading stage does not preclude the Defendant Officers from re-raising the defense prior to trial.  *See Ansley v. Heinrich*, 925 F.2d 1339, 1347 (11th Cir. 1991) (holding that the qualified immunity defense may be raised by way of motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment).

The sovereign immunity statute identifies three categories of conduct which will overcome a police officer's individual immunity: (1) bad faith, (2) malicious purpose, and (3) wanton and willful disregard of human rights, safety, or property.  Both bad faith and malicious purpose require a plaintiff to allege facts demonstrating that the officer acted with actual malice, *see Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008), which requires a showing of "ill will, hatred, spite, [or] an evil intent," *Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002).  Alternatively, "[f]or conduct to be willful and wanton, it must be shown that the defendant knew, or reasonably should have known . . . , that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *Gregory v. Miami-Dade Cty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015).  Facts alleging the violation of constitutional rights by a police officer do not, on their own, demonstrate bad faith, malicious purpose, or wanton and willful conduct.  *See Moore v. Seminole Cty., Fla.*, No. 6:13-cv-224-Orl-31GJK, 2014 WL 4278744, at *6 (M.D. Fla. Aug. 29, 2014), *aff'd*, 806 F.3d 1036 (11th Cir. 2015).

Accepting the facts in the Amended Complaint as true and construing those facts in the light most favorable to Plaintiffs, the Court cannot reasonably infer that the Defendant Officers acted in bad faith, with malicious purpose, or with a wanton and willful disregard of human rights, safety, or property.  The most the Court is able to gather is that the Defendant Officers committed various constitutional violations relative to the searches, seizures, and arrests at issue in this case.  Although Plaintiffs frequently invoke the legal conclusions that the Defendant Officers' acted in bad faith, with malicious purpose, and in wanton and willful disregard of Plaintiffs' rights, Plaintiffs allege no facts speaking to the officers' respective intents.  The Court therefore gives no credence to

these labels.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because claims of constitutional violations by police officers are not enough on their own to demonstrate the requisite intent, the Defendant Officers are entitled to individual immunity on Plaintiffs' state law tort claims pursuant to § 768.28(9)(a), Florida Statutes.  Counts I through X of the Amended Complaint will be dismissed with prejudice.

### C.    Whether the Amended Complaint Constitutes an Impermissible "Shotgun" Pleading

As a final matter, the Defendant Officers accuse the Amended Complaint of being an impermissible shotgun pleading requiring dismissal.  The Defendant Officers maintain that Plaintiffs fail to specify the alleged conduct of any particular officer, instead lumping all seven officers together and alleging the same conduct against all of them.

The Eleventh Circuit has recently outlined four types of "shotgun" complaints that require dismissal.  *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).  The quintessential defect in all "shotgun" complaints is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1323; *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  Moreover, "[s]hotgun pleadings wreak havoc on the judicial system" by forcing courts to expend already scarce judicial resources on "disputes that are not structurally prepared to use those resources efficiently."  *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).

While Plaintiffs' approach of alleging the same conduct against all of the Defendant Officers is less than ideal, the Court finds that the Amended Complaint sufficiently notifies the Defendant Officers of Plaintiffs' claims against them and the factual grounds supporting each claim.  The Defendant Officers also contend that the Amended Complaint is a "shotgun" pleading because Counts XI and XII (Montanez's unconstitutional entry

and unconstitutional search claims, respectively) are duplicative of each other.  However, Rule 12(b)(6) only tests the legal sufficiency of a claim for relief, not its redundancy; an otherwise legally sufficient claim should not be dismissed simply because it might be redundant.  *Wichael v. Wal-Mart Stores East, LP*, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, at *2 (M.D. Fla. Oct. 30, 2014).  Thus, neither Count XI nor Count XII will be dismissed for redundancy.

## IV.    CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Amended Complaint (Doc. 28) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants' Motion to Dismiss is **GRANTED** as to Counts I through X. Counts I through X of Plaintiffs' Amended Complaint are **DISMISSED WITH PREJUDICE**.

2. Defendants' Motion to Dismiss is otherwise **DENIED**.

3. Defendants shall answer the remainder of Plaintiffs' Amended Complaint within **fourteen (14) days** of this Order.

**DONE AND ORDERED** in Orlando, Florida on January 15, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record